IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

SOUTHERN BAPTIST HOSPITAL
OF FLORIDA, INC., d/b/a BAPTIST                    CIV. No. 3:17-cv-1214-J34JBT
MEDICAL CENTER and d/b/a
WOLFSON CHILDREN'S HOSPITAL
and d/b/a BAPTIST MEDICAL
CENTER SOUTH and d/b/a BAPTIST
NORTH and d/b/a BAPTIST TOWN
CENTER and BAPTIST MEDICAL
CENTER OF THE BEACHES, INC.,
d/b/a BAPTIST MEDICAL CENTER
BEACHES AND BAPTIST MEDICAL
CENTER OF NASSAU, INC., d/b/a
BAPTIST MEDICAL CENTER
NASSAU and BAPTIST MEDICAL
CENTER CLAY, INC., d/b/a BAPTIST
MEDICAL CENTER CLAY,

      Plaintiff,

v.

CELTIC INSURANCE COMPANY,
d/b/a AMBETTER FROM SUNSHINE
HEALTH,

      Defendant.
_____/

## MOTION TO DISMISS, ALTERNATIVE MOTION TO STRIKE DEMAND FOR ATTORNEYS' FEES (COUNTS III & IV), AND INCORPORATED MEMORANDUM OF LAW

Defendant Celtic Insurance Company d/b/a Ambetter from Sunshine Health ("Celtic"),

pursuant to Rules 12(b)(6) and 12(f) of the Federal Rules of Civil Procedure and Local Rule

3.01, files this Motion to Dismiss, Alternative Motion to Strike Demand for Attorneys' Fees (as

to Counts III and IV of the Complaint), and incorporated Memorandum of Law.

## INTRODUCTION

In this action, the Plaintiffs (referred to, collectively, as the "Hospital"), seek compensation for medical services provided to Celtic's policyholders (collectively, the "Subscribers") at the Hospital's various locations in Duval County, Florida. Celtic is an insurance company[1] that sells Health Insurance Marketplace policies, pursuant to and in compliance with the Patient Protection and Affordable Care Act, 124 Stat. 119 (Mar. 23, 2010) ("ACA"), to Florida citizens, including the Subscribers. Complaint, ¶¶ 3-5, n.3. The gravamen of the Complaint is that Celtic has underpaid or, in some cases, denied payment for services rendered by the Hospital to the Subscribers.

In Counts I and II of the Complaint, the Hospital alleges that Celtic has not reimbursed the Hospital for services provided in accordance with the terms of the policies held by the Subscribers, and that it has a right to recover the full amounts due under assignment of benefits and third party beneficiary theories. In Count III, the Hospital alleges that Celtic has been unjustly enriched by failing to pay the reasonable value of services provided. In Count IV, the Hospital alleges that Celtic has violated Sections 627.64194 and 641.513(5), Florida Statutes, by failing to pay the Hospital "its" usual and customary charges for emergency services. And in Count V, the Hospital seeks a declaratory judgment on the basis of the theories alleged in the preceding counts.

As provided in greater detail below, each of these counts fails to state a claim on which relief can be granted because each of these counts relies on material misapprehensions either of the terms of the underlying insurance contracts or of Florida law. In Counts I and II, the Hospital misstates the scope of coverage provisions of the attached insurance policy in a manner that

---

[1] Celtic is a type of health insurance company designated as an "exclusive provider organization." § 627.6472, Fla. Stat.

renders these counts internally inconsistent and substantively deficient. In Count III, the Hospital asserts a legal theory (not in the alternative) that is irreconcilable with its allegation in Counts I and II, that an express contract exists between Celtic and each of the Subscribers that governs the scope of payment for the relevant services. In Count IV, the Hospital misstates the measure of its entitlement to compensation for emergency services rendered, by alleging entitlement to "its" usual and customary charges (presumably referring to the Hospital's billed charges), which is irreconcilable with the unambiguous terms of the statutes on which the Hospital relies as well as the controlling precedent construing them. Lastly, Count V relies on these same misapprehensions of Florida law and the scope of coverage under the insurance contracts at issue, and thus seeks a declaration that has no meaning to either party.

In addition, Counts III and IV do not state a valid basis for recovery of attorneys' fees. The only authority for attorneys' fees alleged in the Complaint is Section 627.428, Florida Statutes, which, by its plain terms, is only applicable to actions brought "under a policy or contract executed by [an] insurer." § 627.428(1), Fla. Stat. Count III alleges a legal theory, an essential element of which is that no express contract exists, and Count IV is expressly based on the absence of a contract between the Hospital and Celtic.

For these reasons, developed more fully below, the Complaint should be dismissed or, alternatively, the attorneys' fees requests in Counts III and IV should be stricken.

## ANALYSIS

I. **The Complaint Should Be Dismissed for Failure to State a Claim Upon Which Relief Can be Granted.**

A. **Counts I and II should be dismissed because they misstate the scope of benefits available under the Policy attached to the Complaint.**

The central premise of Counts I and II is that the Hospital has rendered services to Celtic's Subscribers for which the Hospital has not been appropriately compensated under the

terms of the insurance contracts at issue.  The Hospital attaches a sample policy, as Exhibit A to the Complaint (the "Policy"), and the Complaint alleges that the pertinent provisions of the Policy are substantially similar to all of the individual policies at issue.  Complaint, ¶ 8.   The Hospital also attaches a spreadsheet, as Exhibit B to the Complaint (the "Spreadsheet"), which is alleged to reflect the individual patient accounts on which the Hospital bases this action.

The Hospital alleges that all of the services at issue are "Covered Services" as defined in the Policy because all of the services fall into one of four categories:

a) Emergency Services as that term is defined in the Policy Pages 13-24;

b) Authorized by [Celtic];

c) Essential Health Benefits as defined on Page 14 of Policy;

d) Emergency Services and care as defined in Fla. Stat. 641.47(8) provided after July 1, 2016 and the sole responsibility of [Celtic] pursuant to Fla. Stat. 627.64194(2).

Complaint, ¶ 7.

Central to Counts I and II is an allegation the Hospital terms the "Appropriate Amount," which is the amount the Hospital contends is due and owing to the Hospital for its delivery of the services at issue.  *See* Complaint, ¶ 21.[2]  In Count I, the Hospital alleges that the Policyholders have assigned to the Hospital their rights to payment of benefits under their respective policies, Complaint, ¶ 16, and that Celtic is in breach of contract to the Hospital (as assignee) by failing to pay the Hospital the "Appropriate Amount" for the services at issue, Complaint, ¶ 24.  Similarly, in Count II, the Hospital alleges that it is an intended third party beneficiary of the policies and

---

[2] Counts II and V contain a technical defect in that they rely on the term "Appropriate Amount" but do not independently define the term.  Appropriate Amount is defined in paragraph 21 of the Complaint.  Counts II and V reallege and incorporate paragraphs 1 through 15 only.  Count II fails to state a cause of action for this reason alone, and Count V fails to state a cause of action as well for this reason, to the extent the declaration sought in that count relies on the term "Appropriate Amount."  However, the memorandum above assumes, in the alternative, that these Counts are not defective merely because of the technical pleading deficiency and argues that the Counts nonetheless fail to state a cause of action because the "Appropriate Amount" is not the appropriate measure of benefits to which the Hospital is entitled under the policies.

that Celtic is in breach of contract to the Hospital (as third party beneficiary) by failing to pay the

Hospital the "Appropriate Amount."  Complaint, ¶¶ 23-24.

The Complaint defines "Appropriate Amount" as follows:

a)  For Emergency Services-

    i)  Hospital's billed charges when there was no network provider
       reasonably accessible to render the services … ;

    ii)  If there was a Network provider reasonably accessible, The [sic.]
       greater of ("Greater of") … :

       1)  Medicare payment;

       2)  Amount calculated using the same methodology generally
          used by [Celtic] to determine out of network payments;

       3)  The contract amount paid to Network providers and if more
          than one, the Median amount;

       4)  After July 1, 2017, the usual and customary charge in the
          community ("U & C") … .

b)  For Non-Emergency services authorized or approved by [Celtic], The [sic.]
    greater of 1) or 2) above.

Complaint, ¶ 21 (citations to Policy omitted).

The Complaint contains a significant inconsistency in that the "Appropriate Amount" on

which the Hospital relies in Counts I and II bears little relationship to the scope of covered

benefits set forth in the actual Policy attached to the Complaint.  By its plain terms, the Policy

attached is only a part of the contract between Celtic and each Policyholder.  As stated in the

Policy, "[t]his contract, the Schedule of Benefits, the application as submitted to the exchange

and any amendments or riders attached shall constitute the entire contract under which covered

services and supplies are provided or paid for by [Celtic]."  Complaint, Exhibit A, p.4 (emphasis

omitted).  The Policy further provides: "This contract should be read and re-read in its entirety.

Since many of the provisions of this contract are interrelated, you should read the entire contract

to get a full understanding of your coverage."  Complaint, Exhibit A, p. 4 (emphasis omitted).

The Policy admonishes Policyholders: "This contract also contains exclusions, so please be sure

to read this contract carefully."  Complaint, Exhibit A, p. 4 (emphasis added).

Simply stated, the Hospital has ignored the Policy's admonishments "to read this contract carefully" and to "read and re-read [it] in its entirety."  Rather than read the entire contract, it is clear from the Complaint that the Hospital has read one defined term in the Policy in isolation—the definition of "eligible service expense"—and asserts that Celtic, in all cases, has committed to paying 100% of what would satisfy the definition of this term.  The "Appropriate Amount" definition is primarily the Hospital's attempt at a restatement of the "eligible service expense" definition.  *See* Complaint, ¶ 21 & n.6 (citing to pages where "eligible service expense" is defined).  The only addition is a reference to section 641.513, Florida Statutes, pursuant to which the Hospital contends that it is entitled to "the usual and customary charge in the community" for emergency services rendered after July 1, 2017.[3]  Complaint, ¶ 21 & n.7.  In all other instances, the Hospital asserts that the "Appropriate Amount" is equivalent to the "eligible service expense" definition in the Policy—in other words, the Complaint alleges the "Appropriate Amount" due under the Policy is 100% of "eligible service expenses."

The Policy attached to the Complaint by its own express terms unambiguously contradicts the Hospital's allegation that the "eligible service expenses" term sets forth the amount of policy benefits due for medical claims.  As provided above, the Policy makes clear that each policy includes, among other things, a "Schedule of Benefits" as part of "the entire contract under which covered services and supplies are provided or paid for by [Celtic]."  Complaint, Exhibit A, p.4.   The Policy further makes clear that the Schedule of Benefits includes, among other things "[t]he applicable deductible amount(s), cost sharing percentage,

---

[3] The Complaint also references "Fla. Stat. 627.4194," *see* Complaint, ¶ 21; however, this is no doubt a reference to Section 627.64194, Florida Statutes.  As provided in detail below, the Hospital has misapprehended the scope of its entitlement under Sections 627.64914 and 641.513.

and copayment amounts … ."  Complaint, Exhibit A, p.29 (emphasis omitted); *see also, e.g.*, Complaint, Exhibit A, p.1 ("[Each] contract contains a deductible provision."); Complaint, exhibit A, p.34 (for emergency treatment, "[s]ee your Schedule of Benefits for limitations").

The Policy further states that "[b]enefits are subject to contract definitions, provisions, limitations and exclusions."  Complaint, Exhibit A, p.1.  In other words, applying the plain terms of the Policy, Policyholders should first refer to their respective Schedule of Benefits to determine the potential scope of coverage.  At that point, Policyholders should look to the Policy itself to determine if any of its "definitions, provisions, limitations and exclusions" *limit* the amount of benefits that would otherwise be provided.  The "eligible service expenses" provision on which the Hospital relies is one such *limitation* on the amount of these benefits.  *See* Complaint, Exhibit A, p.29 (amount of major medical expense benefits set forth in the Schedule of Benefits is *limited by* "1. Any specific benefit limits stated in the contract; and 2. A determination of eligible service expenses") (emphasis omitted); *see also, e.g.*, Complaint, Exhibit A, p.44 (excluding "any portion of the charges that are in excess of the eligible service expense") (emphasis omitted); Complaint, Exhibit A, pp.34-36 (setting forth limitations on medical and surgical expense benefits); Complaint, Exhibit A, pp.44-46 (settling forth series of non-covered services and exclusions).

Benefits payable must also be for "covered services" or "covered service expenses," defined as:

> services, supplies or treatment as described in this contract which are preformed, prescribed, directed or authorized by a physician.  To be a covered service the service, supply or treatment must be
>
> 1. Provided or incurred which the *member's* coverage is in force under this contract;
> 2. Covered by a specific benefit provision of this contract; and
> 3. Not excluded anywhere in this contract.

Complaint, Exhibit A, p.11 (emphasis omitted).  The "deductible amount" which is an amount of covered expenses "shown in the Schedule of Benefits" "must actually be paid during any calendar year before any benefits are payable."  Complaint, Exhibit A, p.11 (emphasis omitted). Further, "[t]he deductible amount does not include any copayment amounts."  Complaint, Exhibit A, p.12 (emphasis omitted).

Where, as here, "there is a conflict between allegations in a pleading and exhibits thereto, it is well settled that the exhibits control."  *Crenshaw v. Lister*, 556 F.3d 1283, 1292 (11th Cir. 2009) (quoting *Simmons v. Peavy–Welsh Lumber Co.*, 113 F.2d 812, 813 (5th Cir.1940)).  Thus for purposes of evaluating this motion, the Court must refer to the Policy to determine the measure of benefits due under the Policy rather than the Hospital's allegations.

For these reasons, Counts I and II fail to state a claim upon which relief can be granted. Celtic could not have breached its contract with Policyholders (or their assignee) by failing to pay the Hospital the "Appropriate Amount" (as the Hospital defines that term) because the "Appropriate Amount," as defined in the Complaint, does not, as a matter of law, correctly state the scope of benefits due and payable for any claim.

### B.  Count III should be dismissed because it is precluded by the existence of express written contracts between Celtic and the Subscribers.

In Count III, the Hospital alleges that Celtic has been unjustly enriched by its failure to pay Hospital the "reasonable value" of the services rendered to Celtic's subscribers.  Complaint, ¶ 29.  However, Count III is not alleged in the alternative: the Hospital alleges in Count III, as it does in all other counts, that the services in question are "Covered Services" "in that they are payable under the Policy."  Complaint, ¶ 7; *see* Complaint, p. 6 (incorporating paragraph 7 into Count III); Complaint, ¶¶ 26-29 (describing the services in question as "Covered Services").  In other words, the Hospital does not allege, for purposes of Count III, that no contract existed

dictating the payment terms between Celtic and the Subscribers.  To the contrary, the Hospital asserts in Count III that it is entitled to the "reasonable value" of the services at issue even though the services are in all cases "Covered Services" under contracts dictating payment terms.

It is well settled in Florida that an "unjust enrichment claim [is] precluded by the existence of an express contract between the parties concerning the same subject matter." *Diamond "S" Dev. Corp. v. Mercantile Bank*, 989 So. 2d 696, 697 (Fla. 1st DCA 2008); *accord, e.g.*, *Braham v. Branch Banking & Tr. Co.*, 170 So. 3d 844, 848 (Fla. 5th DCA 2015) ("The existence of an express contract negates an action under an unjust enrichment theory."); *Ocean Comm'ns, Inc. v. Bubeck*, 956 So.2d 1222, 1225 (Fla. 4th DCA 2007) ("[A] plaintiff cannot pursue an equitable theory, such as unjust enrichment or quantum meruit, to prove entitlement to relief if an express contract exists."); *Real Estate Value Co. v. Carnival Corp.*, 92 So.3d 255, 263 n.2 (Fla. 3d DCA 2012) ("We acknowledge the well settled principle that 'the law will not imply a contract where an express contract exists concerning the same subject matter.'") (emphasis omitted) (quoting *Kovtan v. Frederiksen*, 449 So.2d 1, 1 (Fla. 2d DCA 1984)).

Count III must be dismissed as a consequence of this settled legal principle.  Because the Hospital alleges that all of its claims are for "Covered Services" under policies between Celtic and its Subscribers that dictate payment terms, the Hospital is foreclosed from pursuing an unjust enrichment theory of recovery.

### C. Count IV should be dismissed because it misstates the measure of compensation to which the Hospital is entitled under Sections 627.64194 and 641.513, Florida Statutes.

In Count IV, the Hospital alleges that, pursuant to Section 627.64194, Florida Statutes, Celtic is required to pay the Hospital "its," i.e., "the Hospital's" usual and customary charges for emergency services rendered to Celtic's Subscribers.  In other words, and although the Complaint could be more artfully pled, it is clear that the Hospital is seeking as its measure of

recovery under Count IV the amount the Hospital itself charges, i.e., the Hospital's "billed charges" for these services.

The relevant Florida statutes and the case law construing them cannot be reconciled with the Hospital's allegations in at least two respects.  First, Section 627.64194 unambiguously provides that whatever charges are due are to be reduced "by insured cost share responsibilities as specified in the health insurance policy."  § 627.64194(4), Fla. Stat.  Second, and even more significantly, the Hospital's unilateral determinations (and ubiquitously inflated versions) of what it *bills* for particular services do not represent the "usual and customary" charges described in Section 641.513.  To the contrary, "usual and customary" charges under Section 641.513 is equivalent to "fair market value of the services provided."  *Baker County Medical Servs., Inc. v. Aetna Health Mgmt., LLC*, 31 So. 3d 842, 845 (Fla. 1st DCA 2010).

Although not spelled out in the Complaint, the Hospital is implicitly alleging that it is a "nonparticipating provider" within the meaning of Section 627.64194, because "the facility has not contracted with an insurer [i.e., Celtic] to provide emergency services to its insureds at a specified rate."  § 627.64194(1)(e), Fla. Stat.  Section 627.64194 requires the insurer to reimburse a nonparticipating provider for "covered emergency services," with "covered" meaning "in accordance with the coverage terms of the health insurance policy."  § 627.64194(2), Fla. Stat.  In other words, the insurer is not liable for "applicable copayments, coinsurance, and deductibles."  *Id.*

Count IV is due to be dismissed for this reason alone.  As with Counts I and II, Count IV fails to accurately allege the scope of coverage provided in the applicable insurance policies.

With respect to the second issue, Section 627.64194 provides that the insurer must reimburse nonparticipating providers of emergency services "as specified in s. 641.513(5),

reduced only by [these] insured cost share responsibilities as specified in the health insurance policy … ."   § 627.64194(4), Fla. Stat.  And Section 641.513(5) provides, in relevant part, as follows:

> Reimbursement for services pursuant to this section by a provider who does not have a contract with the health maintenance organization shall be the lesser of:
>
> (a)  The provider's charges;
>
> (b)  The usual and customary provider charges for similar services in the community where the services were provided; or
>
> (c)  The charge mutually agreed to by the health maintenance organization and the provider within 60 days of the submittal of the claim. … .

§ 641.513(5), Fla. Stat.

The Hospital alleges that it is entitled to payment for the relevant services in accordance with subsection (b): the "usual and customary provider charges for similar services in the community where services were provided."  *See* Complaint, ¶¶ 30-32.  The Florida First District Court of Appeal addressed the meaning of this phrase in *Baker County Medical Services, Inc. d/b/a Ed Fraser Memorial Hospital v. Aetna Health Management, LLC*, 31 So. 3d 842 (Fla. 1st DCA 2010), an appeal arising out of a similar dispute between a Florida hospital and a health maintenance organization ("HMO") over the amount of payment due to the hospital for emergency medical services.  In that case, the Florida court expressly accepted the HMO's argument "that the phrase 'usual and customary charges' includes consideration of the amounts billed by providers as well as the amounts accepted as payment" and expressly rejected the hospital's argument "that the 'usual and customary charges' include only the amounts billed or the charge master rates."  *Id.* at 845.

The court explained as follows:

> The term "charges" is not defined in section 641.513(5).  When a statute does not define a term, we rely on the dictionary to determine the definition.  "Charge" is

11

defined as a "[p]rice, cost, or expense."  In paragraph (5)(a), the term "charge" is modified by the terms "usual" and "customary."  "Usual" is defined as "[o]rdinary; customary" and "[e]xpected based on previous experience." "Customary" is defined as "[a] record of all of the established legal and quasi-legal practices in a community."  <u>In the context of the statute, it is clear what is called for is the fair market value of the services provided.  Fair market value is the price that a willing buyer will pay and a willing seller will accept in an arm's-length transaction.</u>

*Id.* (internal citations omitted; emphasis added).

Jacksonville is located within the territorial jurisdiction of the First District Court of Appeal, and "[g]enerally, this Court must follow the Florida District Courts of Appeal decisions unless there is persuasive evidence demonstrating that the Florida Supreme Court would rule otherwise."  *Griffin v. Philip Morris USA, Inc.*, No. 3:09-CV-11128, 2014 WL 12616122, at *2 (M.D. Fla. July 16, 2014) (citing *Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1348 (11th Cir. 2011)).  Consequently, this Court should follow the *Baker County Medical Services* decision.

As stated in that decision, the standard for reimbursement under Section 641.513(5) is "the fair market value of the services provided" with "fair market value" defined as "the price that a willing buyer will pay and a willing seller will accept in an arm's-length transaction." *Baker County Medical Services*, 31 So. 3d at 845.  Count IV of the Complaint is deficient because the Hospital alleges that it was damaged when it did not receive what "it" would charge for services.  While the Hospital's billed charges may have some relevance to the issue of fair market value, *id.* at 845-46, they are surely not determinative of fair market value.

> **D.  Count V should be dismissed because it relies entirely on the same misapprehensions of Florida law and the terms of the policies at issue as the previous counts.**

In Count V, the Hospital alleges that it is "unsure of its rights under the Policy and Florida Statutes 627.64194 and Florida Statute 641.513, in that [Celtic] paid [the Hospital] less

than The Appropriate Amount (See paragraph 21 above) or the reasonable value of the Covered Services provided."   Complaint, ¶ 34.   Accordingly, the Hospital seeks a declaration determining, among other things that Celtic "failed to pay [the Hospital] the Appropriate Amount" and "failed to pay [the Hospital] the reasonable value of the Covered Services provided." Complaint, ¶ 37.

Count V is legally deficient because, for the reasons stated above, the Hospital has, as a matter of law, misapprehended the scope of reimbursement to which it could be entitled under Florida law and the policies at issue.   The Hospital's characterization of the "Appropriate Amount" does not accurately state the scope of coverage under the policies because it ignores the Schedule of Benefits included with each policy, along with deductibles, limitations, and exclusions.   The Hospital is not entitled to the "reasonable value of the Covered Services provided" because the express agreements between Celtic and the Subscribers dictate the parameters of Celtic's commitment.  With respect to the Hospital's entitlement to reimbursement for covered emergency services under Sections 627.64194 and 641.513(5), the Hospital may be unsure of its rights, but the Hospital is not, as a matter of law, entitled to more than the fair market value of these services, *Baker County Medical Services*, 31 So. 3d at 845, further reduced by all of the "insured cost share responsibilities as specified in the health insurance [policies at issue]," § 627.64194(4), Fla. Stat.

## II.     The Hospital's Request for Attorneys' Fees in Counts III and IV Should Be Stricken Because These Counts Do Not Arise Out of Insurance Contracts.

The Hospital's requests for an award of attorneys' fees in Counts III and IV of the Complaint are irreconcilable with the plain and unambiguous language of the statute on which it relies as the basis for the requested award.   The Hospital relies exclusively on Section 627.428, Florida Statutes.   This statute unambiguously requires, as a precondition to the availability of

13

attorneys' fees, (1) the existence of a contract, and (2) that the cause of action at issue is seeking to enforce the terms of a contract.

In relevant part, Section 627.428 provides for the availability of attorneys' fees "[u]pon the rendition of a judgment or decree by any of the courts of this state against an insurer and in favor of any named or omnibus insured or the named beneficiary under a policy or contract executed by the insurer … ." § 627.428(1), Fla. Stat. (emphasis added). Accordingly, Section 627.428, by its plain terms, is only applicable of actions brought "under a policy or contract executed by the insurer."

With respect to Count III, as provided above, it is well settled in Florida that an "unjust enrichment claim [is] precluded by the existence of an express contract between the parties concerning the same subject matter." *Diamond "S" Dev. Corp.*, 989 So. 2d at 697. And Count IV is explicitly based on the lack of a contract between the Hospital and Celtic. In this count, the Hospital alleges that Celtic violated Section 641.513(5), which obligates HMOs to reimburse providers for certain emergency services provided to the HMO's subscribers but only in circumstances where "no contract exists between the provider and the [HMO]." § 641.513(5), Fla. Stat. Accordingly, the Hospital's request for fees in Counts III and IV is irreconcilable with these causes of action.

Florida courts "follow[] the 'American Rule' that attorney's fees may be awarded by a court only when authorized by statute or by agreement of the parties." *State Farm Fire & Cas. Co. v. Palma*, 629 So. 2d 830, 832 (Fla. 1993). Accordingly, motions to strike requests for attorneys' fees should be granted when the requests "are not supported by any statutory or contractual basis for recovery." *Grove Isle Ass'n, Inc. v. Grove Isle Assocs., LLLP*, No. 2009CA51779, 2015 WL 10527235, at *2 (Fla. 11th Jud. Cir. May 11, 2005) (citing *State Farm*

*Fire & Cas. Co.* in granting motion to strike request for attorneys' fees); *see also City of Winter Garden v. State ex rel. Wood*, 311 So. 2d 396, 396 (Fla. 4th DCA 1975) (reversing trial court's denial of motion to strike request for attorneys' fees "as no statutory right exists authorizing in the instant case award of attorneys' fees").

Because the absence of a contract is an essential element of Count III and Count IV is based on the absence of a contract between Celtic and the Hospital, awarding fees with respect to the Hospital's prosecution of these counts would be diametric to the plain and unambiguous language of Section 627.428.   Accordingly, the requests for attorneys' fees in those counts should be stricken by the Court.

WHEREFORE, for the foregoing reasons, Celtic respectfully requests that the Court enter an order dismissing the Complaint for failure to state a claim upon which relief can be granted.  In the alternative, Celtic requests that the Court strike the requests for attorneys' fees in Counts III and IV of the Complaint.

DATED this 22nd day of November, 2017.

Respectfully submitted,

*/s/ Michael J. Glazer*
MICHAEL J. GLAZER
Florida Bar No. 0286508
ERIK M. FIGLIO
Florida Bar No.: 745251
Ausley McMullen
Post Office Box 391
123 South Calhoun Street
Tallahassee, Florida 32302
(850) 224-9115
mglazer@ausley.com
rfiglio@ausley.com

ATTORNEYS FOR DEFENDANT

15

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by

CM/ECF this 22nd day of November, 2017 to:

      Alan M. Fisher
      Alan M. Fisher, P.A.
      818 A1A North, Suite 303
      Ponte Vedra Beach, FL  32084
      amfpalegal@aol.com
      amfpalegal@gmail.com
      eclark.amfpalegal@gmail.com

                                    /s/ Michael J. Glazer
                                    Attorney

## <u>CERTIFICATE PURSUANT TO LOCAL RULE 301(g)</u>

Pursuant to Local Rule 3.01(g), undersigned counsel conferred with counsel for the Hospital

prior to filing this motion.  As set forth in the motion, counsel for the Hospital has consented to the

extension of time to respond to the Complaint requested by Celtic.

                                    /s/ Michael J. Glazer
                                    Attorney